### EDGEWORTH COMPANY *vs.* JOHN WETHERBEE, JR.

The treasurer of a corporation, on resigning his office and settling his account, appeared
to be responsible for a certain number of shares, and, to meet this responsibility, pur·
chased and delivered to the corporation that number of shares, and directed them to be
entered in their books, to the credit of the person to whom they had actually been
delivered; and it was so done, but that person refused to repay him the value of the
shares. *Held*, that the corporation might maintain an action against that person for the
value of the shares, in their own name, for the benefit of such treasurer.

ACTION OF TORT for the conversion of two hundred shares in
the plaintiffs' capital stock. Trial before *Merrick*, J., to whose
rulings the defendant alleged exceptions. The case is stated in
the opinion.

SHAW, C. J. It appears by the case that Wetherbee, being a
broker and dealer in stock, had a credit with the plaintiffs for
shares, and when he sold shares in their corporation, gave orders
on them to make transfers, which of course were charged to
him. It further appears, that, in consequence of having au-
thorized transfers of shares in New York, the company, upon
the defendant's orders, had delivered him two hundred shares
which were not charged to him in the company's books here,
until returns were made from New York, when the mistake was
discovered. In the meantime, Matthew S. Parker, their treasurer
and clerk, having resigned that office, and coming to settle with
the company, became apparently responsible for two hundred
shares transferred under his direction, more than were accounted
for by charges to others on his books ; and whether legally lia·
ble or not, he felt bound to make the loss good to the company.
For that purpose, he purchased and delivered to the company
two hundred shares, and directed them to be entered on the
books of the company to the credit of Wetherbee, and thus
balanced his account. Probably Parker did this supposing that
Wetherbee would repay him, because, as it was done in dis-
charge of Wetherbee's debt, it was equitable that he should do
so ; and he immediately informed Wetherbee of this act, and
requested payment of him, which he declined making.

But this act did not make Wetherbee the debtor of Parker; for it is a familiar rule of law that a man cannot make another his debtor by paying even his just debt to a third person without his request; but in case he makes such payment at his request, he does it as agent to the debtor, and thereby becomes himself the creditor. But it is a rule equally familiar, that, to prove such request and constitute such agency, a subsequent ratification of an act done in behalf of another is equivalent to a previous request. Having these rules in view, it is manifest that, if the defendant had consented to the payment made by Parker on his account, it would have been a satisfaction of the debt due to the company from Wetherbee, and a bar to any action by them against him for the same debt. It would have made the act of Parker the act of Wetherbee, done by his agent, and the credit by the company to Wetherbee right. And such ⁻atification would also have made Wetherbee debtor to Parker as for so much paid for his use, at his instance and request.

But Wetherbee declined and refused to ratify it. He could not ratify in part and decline in part; and, by refusing to repay Parker, he refused to ratify Parker's payment to the company for his account. The case then stands thus: The plaintiffs had a good demand against Wetherbee; Parker paid it, without previous request, for account of Wetherbee; when therefore Wetherbee subsequently declined to ratify it, the result was that it had not been in fact paid by Wetherbee, either by himself or his agent, and, so far as he was concerned, he stood indebted to the company as before the gratuitous act of Parker. This conclusion of course depends upon the consideration, that, whatever the parties thought at the time, it is now proved that Wetherbee had the two hundred shares, and was the real debtor to the company; and that, whatever might be the liability of Parker to the company, for mistake or neglect in keeping his books or otherwise, the shares had not come to his use, but had come to the use of the defendant.

Then the question is, Does the entry in the books of the company to the credit of Wetherbee, by which his account was formally balanced, bar them from maintaining this action? We

think not.. Merchants' books are kept for their own use and information; and although they often afford important evidence, especially against those who keep them, they are not conclusive. And if, under a belief that a sum of money was paid by Wetherbee, or by an agent of his, for his account, they had placed the same to his credit, such entry would have been right had he ratified the payment and made it his. But when he refused to ratify it and make the payment his own, then it was obvious that the entry to his credit was made by mistake; and we think they might correct the mistake by a counter entry or otherwise, according to the truth; and that the entry to his credit in their books was not a bar or estoppel to show the truth in this respect. *Barker* v. *Blake*, 11 Mass. 16.

So, in a recent case, goods were sold to a party on his con tract to pay for them, to be delivered to a third person. At his request, the goods were charged to such third person and a bill sent to him; this was held to be strong proof that the credit was given to such third person and not to the defendant, but it was held not conclusive. The truth may be shown, notwithstanding such entry in books. *James* v. *Spaulding*, 4 Gray, 451.

This demand being one still due from Wetherbee to the company, though they could not transfer it at law, still it was a chose in action, assignable in equity; and their late treasurer, Parker, having from his own funds made the company good, they are bound in equity, when they recover this demand, to receive and hold it to the use and for the benefit of Parker. The equity of the case is clear; and we think there is no principle of law to prevent the plaintiffs from maintaining this action for the use of Parker. *Exceptions overruled.*

*J. M. Keith*, for the defendant.

*G. G. Hubbard*, for the plaintiffs.